UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEISHA WATERS,

                              Plaintiff,

        -against-

BRIDGECREST CREDIT COMPANY,
LLC,

                              Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/2026
```

25 Civ. 3115 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Keisha Waters, brings this action against Defendant, Bridgecrest Credit

Company, LLC ("Bridgecrest"), alleging that Bridgecrest violated the Uniform Commercial

Code ("UCC") and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, when the

parties had a dispute in connection with Plaintiff's purchase of a used vehicle. *See generally*

Am. Compl., ECF No. 18. Bridgecrest moves to compel arbitration and stay the proceedings

pursuant to the Federal Arbitration Act ("FAA"). *See* Mot., ECF No. 23; Mem., ECF No. 24;

Opp., ECF No. 27; Reply, ECF No. 28. For the reasons stated below, the motion to compel

arbitration is granted, and the action is stayed.

## BACKGROUND

On August 19, 2022, Plaintiff entered into a retail installment contract and a retail

purchase agreement (together, the "Contract") with Caravana, LLC ("Carvana"), for the purchase

of a used 2019 Chevrolet Equinox (the "Vehicle") in Missouri. Am. Compl. ¶ 18; *see also* Retail

Installment Contract, ECF No. 26-1; Retail Purchase Agreement, ECF No. 26-2. Under the

Contract, Plaintiff agreed to make 71 monthly payments in the amount of $644.00, beginning on

September 19, 2022, and one final payment in the amount of $541.63 due on August 19, 2028.

Retail Installment Contract at 1. Bridgecrest claims to be Carvana's third-party loan provider.

Pleasant Decl. ¶ 4, ECF No. 25.  According to Bridgecrest, once a buyer acquires title of a car with Carvana as the lienholder, Bridgecrest "secures and manages the title until the loan is refinanced or paid in full."  *Id.*  Bridgecrest also alleges that it is responsible for "managing payments, credit reporting, collection activities, repossession proceedings, changes in residence, name changes[,] and refinancing or paying off loans."  *Id.*  Bridgecrest services Plaintiff's account pursuant to the Contract.  *Id.* ¶ 5; Am. Compl. ¶ 17.  In October 2022, Plaintiff provided Bridgecrest with an updated address "via its app and a phone call."  Am. Compl. ¶ 22.  On December 22, 2023, the Vehicle was impounded after an accident, and Bridgecrest repossessed it on January 18, 2024.  *Id.* ¶ 21.  On May 10, 2024, Bridgecrest sold the Vehicle for $1,150, which Plaintiff alleges was below market value.  *Id.* ¶ 25.

On April 15, 2025, Plaintiff brought this action against Bridgecrest, alleging that it attempted to unlawfully collect a $19,168 repossession deficiency balance, which Plaintiff claims she did not owe, "falsely reported a derogatory tradeline to national consumer reporting agencies," and "failed to send required UCC notices" to Plaintiff's updated address.  *Id.* ¶¶ 1–3, 23–27; *see also* Compl., ECF No. 1.  Bridgecrest moves to compel arbitration, arguing that as part of Plaintiff's transaction for the Vehicle, she "contemporaneously signed an arbitration agreement" (the "Arbitration Agreement"), which governs Plaintiff's claims against Bridgecrest.  Mem. at 3–4; *see also* Arbitration Agreement, ECF No. 26-3.  Plaintiff argues that the motion should be denied because the Arbitration Agreement does not bind Bridgecrest, and there is no arbitration agreement between Plaintiff and Bridgecrest.  *See* Opp. at 5.

**DISCUSSION**

I.    <u>Legal Standard</u>

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable,

save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, parties can petition a district court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA reflects a "federal policy favoring arbitration," and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted).

First, "before an agreement to arbitrate can be enforced, the district court must . . . determine whether such agreement exists between the parties. . . . This question is determined by state contract law." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73–74 (2d Cir. 2017); *see Coinbase, Inc. v. Suski*, 602 U.S. 143, 147–49 (2024). "[A] party seeking to invoke FAA § 4 must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010). "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the Court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Meyer*, 868 F.3d at 74 (cleaned up). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing 9 U.S.C. § 4).

Second, "[i]f the district court concludes that an agreement to arbitrate exists, 'it should then consider whether the dispute falls within the scope of the arbitration agreement.'" *Meyer*, 868 F.3d at 74. (citation omitted). "In other words, a court faced with a motion under FAA §§ 3 and 4 must determine whether there is a valid contract to arbitrate between the parties, and whether the dispute is covered by the contract." *Martinez v. GAB.K, LLC*, 741 F. Supp. 3d 26, 32 (S.D.N.Y. 2024) (alteration adopted) (citation and quotation marks omitted).

When the question of arbitrability arises in the context of a motion to compel arbitration, the Court applies a "standard similar to that applicable for a motion for summary judgment." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). The Court will, therefore, "consider all relevant, admissible evidence . . . [and] draw all reasonable inferences in favor of the non-moving party." *Id.* (citation omitted).

II.   <u>Admissibility of Declarations</u>

First, Plaintiff argues that Bridgecrest may not use the two declarations submitted in support of its motion to establish its status as a loan servicer for Carvana, and as a servicer of the Contract. Plaintiff contends that the declarations are inadmissible under Federal Rule of Evidence 1002, because the best evidence would be the servicer agreement between Carvana and Bridgecrest, and under Rule 803(6), because the declarants do not have custodial roles. *See* Opp. at 7–8. Both arguments fail.

Rule 1002 mandates that "[a]n original writing, recording, or photograph is required in order to prove its content." Fed. R. Evid. 1002. Here, Bridgecrest seeks to prove the content of the Arbitration Agreement, and it provided a "[t]rue and correct cop[y]" of it. Penson Decl. ¶ 9; *see* Arbitration Agreement. The terms of any servicer agreement between Carvana and Bridgecrest are not at issue here. Instead, Bridgecrest adduces the declarations to demonstrate the existence of a servicer agreement with Carvana such that the Arbitration Agreement applies to Bridgecrest. Therefore, "Rule 1002 is inapplicable, as the declarants are not trying to prove the contents of a writing." *In re TerreStar Corp.*, No. 12 Civ. 857, 2013 WL 1767068, at *5 n.3 (S.D.N.Y. Apr. 24, 2013).

Under Rule 803(6), "a custodian need not have personal knowledge of the actual creation of a document to lay a proper foundation for its admission under Rule 803(6). . . . Rather, to lay a

proper foundation, a custodian or other qualified witness must testify that the document was kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the record." *Berman v. Mobil Shipping & Transp. Co.*, No. 14 Civ. 10025, 2019 WL 1510941, at *3 (S.D.N.Y. Mar. 27, 2019) (alterations adopted) (internal quotation marks and citations omitted). Here, both declarations meet the requirements of Rule 803(6). *See* Pleasant Decl. ¶ 6 ("I have personal knowledge that Bridgecrest maintains business records, including records pertaining to Plaintiff."); Penson Decl. ¶ 4 ("I have personal knowledge that Carvana maintains business records, including records pertaining to Plaintiff.").

Therefore, both declarations may be used to support Bridgecrest's motion under Federal Rule of Civil Procedure 56(c)(4) because they were made on personal knowledge, set out facts that would be admissible in evidence, and have demonstrated that the declarants are competent to testify on the matters stated. *See* Pleasant Decl. ¶¶ 1, 6; Penson Decl. ¶¶ 1, 4. According to the declarations, "Bridgecrest is Carvana's third-party loan servicer," including "the servicer for Carvana['s] contract with Plaintiff." Pleasant Decl. ¶¶ 4–5; *see* Penson ¶ 10. Plaintiff does not provide any evidence to rebut Bridgecrest's claim that it is a servicer of the Contract. Accordingly, the Court relies on the undisputed facts in the two declarations for the purposes of this motion.[1]

III.     Agreement to Arbitrate

The issue of "whether the parties have agreed to arbitrate" is governed by state contract law. *Martinez*, 741 F. Supp. 3d at 33.

---

[1] Plaintiff requests discovery or an evidentiary hearing regarding "Bridgecrest's servicer status and the admissibility of its declarations." Opp. at 9. The request is denied. *See Meyer*, 868 F.3d at 74 ("Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue and avoid the need for further court proceedings." (alteration adopted) (citation and quotation marks omitted)).

The Arbitration Agreement here is governed by Missouri law.  The Contract includes a choice of law provision that states "[t]his Contract is governed by the law of Missouri and applicable federal law and regulations."  Retail Installment Contract at 3; *see also* Retail Purchase Agreement at 1 ("[T]his Retail Purchase Agreement . . . is governed by federal law and the law of the state of the Dealership Address listed above[, (Missouri)].").  The Arbitration Agreement is "incorporated into[] the Contract," Arbitration Agreement at 1, and the parties agree that Missouri state law applies to questions of contract formation here.  *See* Mem. at 5–6; Opp. at 6–7.  The parties do not dispute the validity of the Arbitration Agreement, nor do they dispute that Plaintiff executed it.  *See* Mem. at 3–4, 6; Opp. at 6.  Instead, they dispute whether Bridgecrest can be considered a party to the Arbitration Agreement.

Plaintiff contends that because the Contract and Arbitration Agreement were signed only by Plaintiff and Carvana, Bridgecrest, as a non-signatory, cannot enforce the Arbitration Agreement against Plaintiff.  *See* Opp. at 6.  Bridgecrest contends that the Arbitration Agreement covers claims against it because Bridgecrest is a servicer of Plaintiff's account under the Contract and all of Plaintiff's claims arise from and relate to the Contract.  *See* Mem. at 6–7; Reply at 2–4.  Under Missouri law, "[a]s with all questions of contract interpretation, this Court first attempts to ascertain the intent of the parties by looking at the words of the contract, giving those words their plain, ordinary, and usual meaning."  *Cheek v. Cheek*, 669 S.W.3d 155, 159 (Mo. Ct. App. 2023).  The Court "must construe arbitration clauses in favor of arbitration. . . . Short of any positive assurance that a dispute is outside the scope of the arbitration clause, arbitration should be ordered."  *McCracken v. Green Tree Servicing, LLC*, 279 S.W.3d 226, 228 (Mo. Ct. App. 2009) (citing *JBS Farms, Inc. v. Fireman's Fund Agribusiness, Inc.*, 205 S.W.3d 910, 912 (Mo. App. 2006)).

The Arbitration Agreement states that "[w]e both agree that if we have a dispute, either of us can decide to resolve it by using arbitration" and that "[b]y choosing arbitration, we are both giving up our right to go to court (except small claims court) to resolve our dispute."  Arbitration Agreement at 1.  It further explains that "[u]nless prohibited by applicable laws, any Claim shall be resolved, on your election or ours, by arbitration under this [Arbitration] Agreement."  *Id.* at 3.  The Arbitration Agreement defines "Claim" as "any claim, dispute [or] controversy between you and us arising from or related to one or more of the following:

(a) The Contract.

(b) The vehicle or the sale of the vehicle.

(c) The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.

(d) The relationships resulting from the Contract.

(e) Advertisements, promotions or oral or written statements related to the Contract.

(f) The financing terms.

(g) Your credit applications.

(h) The origination and servicing of the Contract.

(i) The collection of amounts you owe us.

(j) Any repossession, or replevin, of the vehicle.

(k) Your personal information.

(l) The recission or termination of the Contract."

*Id.* at 2.  It also defines the terms "us," "we," and "our," among other definitions, as "Carvana, any purchaser, assignee[,] or servicer of the Contract."  *Id.* at 1.  Plaintiff and an authorized

7

signatory for Carvana signed the Arbitration Agreement, but Bridgecrest did not. *Id.* at 5.

To analyze whether Bridgecrest could be considered as a party to the contract under Missouri state law, the Court considers whether Missouri law "would recognize that an agreement to arbitrate had been made taking all the facts alleged in [Bridgecrest's] initial showing to be true." *Hines.*, 380 F. App'x at 24; *see Doe v. Trump Corp.*, 6 F.4th 400, 412 n.8 (2d Cir. 2021) ("[T]he Supreme Court has instructed that state law governs whether a non-signatory may enforce an arbitration clause.")  Under Missouri law, a non-signatory can enforce an arbitration clause against a signatory "in some situations," including "(1) when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided;" or "(2) when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory." *Bull v. Torbett*, 529 S.W.3d 832, 838 (Mo. Ct. App. 2017) (quoting *Tucker v. Vincent*, 471 S.W.3d 787, 796 (Mo. Ct. App. 2015)).  "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Senda v. Xspedius Commc'ns, LLC*, No. 06 Civ. 1626, 2007 WL 781786, at *3 (E.D. Mo. Mar. 13, 2007) (quoting *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005)).

First, in asserting her claims against Bridgecrest, Plaintiff relied on the terms of the Contract.  Although Plaintiff alleges that she "signed no agreement with Bridgecrest," Am. Compl. ¶ 19, she also states that Bridgecrest was required to provide her "prior notice" before repossessing her car, *id.* ¶¶ 21–24, that she notified Bridgecrest of her address changes, *id.* ¶ 22,

and that Bridgecrest "falsely reported an alleged $19,168 repossession deficiency balance to [consumer reporting agencies]," *id.* ¶ 26.  Clearly, each of Plaintiff's claims against Bridgecrest presumes the existence of the written agreement between the parties.

Second, the undisputed facts establish that Bridgecrest is a servicer of the Contract "and has been since inception."  Penson Decl. ¶ 10.  Because the plain text of the Arbitration Agreement provides that a servicer of the Contract "can decide to resolve [a dispute] by using arbitration," Arbitration Agreement at 1, the Court finds that an arbitration agreement exists between the parties.

IV.     Scope of Arbitration Agreement

The Arbitration Agreement governs Plaintiff's claims.  It covers claims relating to the Contract, the Vehicle, the relationships, obligations, and servicing of the Contract, the collection of amounts due, and any repossession.  *See id.* at 2.  Because Plaintiff's claims relate to the Contract, the amount Plaintiff owes Bridgecrest under the Contract, Bridgecrest's repossession of her car, and the relationship and obligations between the parties regarding alleged inaccurate reporting to consumer reporting agencies, all claims are within the scope of the Arbitration Agreement.  *See* Am. Compl. ¶¶ 22–26.  Accordingly, the Court finds the Arbitration Agreement applies to Plaintiff's claims against Bridgecrest, and Bridgecrest has exercised its right to elect arbitration of Plaintiff's claims.

V.    Stay Pending Arbitration Proceedings

Bridgecrest requests to stay this case pending arbitration, and Plaintiff has not opposed that request.  *See* Mem. at 8; *see generally* Opp.  "The district court must stay proceedings once it is satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding."  *Nicosia*, 834 F.3d at 229 (citation and quotation marks omitted).  Because the Court determines the parties agreed to arbitrate, the litigation must be stayed.

## CONCLUSION

For the reasons set forth above, Bridgecrest's motion to compel arbitration is GRANTED.  The action is STAYED pending resolution of the arbitration proceeding.  The parties shall provide a status update to the Court within one week of the termination of arbitration proceedings.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 23.


SO ORDERED.

Dated:  March 23, 2026
New York, New York

_____
ANALISA TORRES
United States District Judge

10